UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X
I APPEL CORP. a/k/a ALLIANCE       :
CORP.,                             :
                                   :
                Petitioner         :    02 Civ. 8879 (MBM)
                                   :
      -against-                    :
                                   :    OPINION & ORDER
NORMAN KATZ,                       :
                                   :
                Respondent.        :
                                   :
----------------------------------X

APPEARANCES:

STEVEN G. STORCH, ESQ.
ELIZABETH M. TOLL, ESQ.
(Attorneys for Petitioner)
Storch Amini & Munves
140 East 45th Street, 25th Floor
New York, NY 10017
(212) 490-4100

DONALD L. KREINDLER, ESQ.
MICHAEL S. FISCHMAN, ESQ.
(Attorneys for Respondent)
Phillips Nizer LLP
666 Fifth Avenue
New York, NY 10103
(212) 977-9700

MICHAEL B. MUKASEY, U.S.D.J.

I. Appel Corporation moves to confirm an arbitration award against Norman Katz that Appel claims was rendered by the American Arbitration Association ("AAA") on or before April 15, 2005 (the "April 15 Award") and to vacate a subsequent award against Katz issued by the AAA on April 18, 2005 (the "April 18 Award"). Katz opposes Appel's motion to confirm the April 15 Award and vacate the April 18 Award, and cross-moves to confirm the April 18 Award and lift this court's stay of enforcement of a judgment entered against non-party Herbert Feinberg ("Feinberg") on June 13, 2001 in a related arbitration. This court has jurisdiction based on diversity of citizenship, 28 U.S.C. § 1332(a)(1). For the reasons set forth below, Appel's motion to confirm the April 15 Award and vacate the April 18 Award is denied, and Katz's motion to confirm the April 18 Award and lift the stay of the June 13, 2001 judgment is granted.

I.

On June 15, 1996, Katz entered into an agreement (the "Agreement") with Feinberg, his former business partner, to sell his interest in Appel for consideration that included an amount "equal to fifty percent (50%) of the net worth of [Appel] as of May 31, 1996..." (Declaration of Steven G. Storch ("Storch Decl."), Ex. E ("April 18 Award"), at 1) Feinberg paid Katz part

1

of the consideration for Katz's interest, and was to pay the remainder after Appel's accountants at Mahoney Cohen Rashba & Pokart, C.P.A., P.C. ("Mahoney Cohen") assessed the company's net worth. (Id.) Mahoney Cohen concluded that Appel's net worth was far less than the parties anticipated at the time of the Agreement due to a significant downturn in the company's fortunes -- a downturn that ultimately forced Appel to file for bankruptcy. (Id.) As a result, Feinberg refused to pay Katz any further installments on the purchase price. (Id.)

The Mahoney Cohen "net worth" assessment and Feinberg's refusal to make further payments under the Agreement have resulted in almost ten years of litigation before several arbitral panels and numerous federal and state court judges. As Judge Haight aptly observed more than two years ago, "[t]hese two former friends and business partners" -- who are now about 80 years of age (see Katz Opp'n Mem. at 2; Appel Reply Mem. at 2 n.1) -- "seem determined to litigate against each other unto death." See Katz v. Feinberg, No. 99 Civ. 11705 CSH, 2003 WL 21750102, at *2 (S.D.N.Y. July 29, 2003). Rather than recount all of these proceedings here, this court will focus only on the pertinent details of the two arbitrations that are implicated by the present action.

The first arbitration was sought by both parties in 1997 to resolve claims by each that the other had breached

obligations under the Agreement, and resulted in an award in favor of Katz. See generally Katz v. Feinberg, 167 F. Supp. 2d 556 (S.D.N.Y. 2001), aff'd 290 F.3d 95 (2d Cir. 2002). Although the details are generally not relevant, that arbitration bears on the present action because the June 13, 2001 judgment partially confirming the panel's award and ordering Feinberg to pay Katz $363,496.29 plus pre- and post-judgment interest was stayed by Judge Haight in September 2001.[1] See Katz v. Feinberg, No. 99 Civ. 11705 CSH, 2001 WL 1132018 (S.D.N.Y. Sept. 24, 2001). Judge Haight imposed the stay because Feinberg claimed a contract right to offset any award Appel might receive from Katz in a related arbitration (the "second arbitration") against the amount of the judgment, and presented "credible evidence" that cast doubt on Katz's ability to pay such an award absent the stay. See id. at 4. The stay was lifted by Judge Haight in July 2003, see 2003 WL 21750102, at *3, but was re-imposed by me on November 16, 2003. (See Storch Decl., Ex. A ("November 16 Order")) Katz's cross-motion asks me to lift the stay and thus allow enforcement of the June 13, 2001 judgment.[2]

The second arbitration, which Appel brought against

---

[1]   Additional detail regarding the first arbitration can be found in Judge Haight's opinion partially confirming the panel's award. See generally Katz, 167 F. Supp. 2d at 558-63.

[2]   The judgment is currently secured by a bond posted by Feinberg. (November 16 Order)

Katz in 1999,[3] commands most of the court's attention here.  In
the second arbitration, Appel sought expenses it had incurred in
resolving various legal proceedings that were pending at the time
of the Agreement and were listed under the Agreement's Exhibit D
(the "Exhibit D Proceedings").  (April 18 Award at 1)  The
expenses were recoverable because Section 8(d) of the Agreement
directed that Katz and Feinberg share equally any losses
resulting from the resolution of the Exhibit D Proceedings, while
affording Katz 50% of any "Net Proceeds" (as defined in the
Agreement) collected from such Proceedings.  (Id. at 2)  When the
arbitration panel –- two arbitrators appointed by the parties and
a third appointed by the AAA -- denied Appel any recovery on the
ground that the claim for the Exhibit D losses belonged to
Appel's creditors, Appel moved here to vacate the panel's actions
under the Federal Arbitration Act (FAA), 9 U.S.C. §§ 1-16 (2000).
(See Storch Decl., Ex. B ("November 5 Transcript"), at 3)

On November 16, 2003, this court granted Appel's motion
and vacated the panel's award on grounds spelled out in a bench
opinion issued on November 5.  (Storch Decl., Exs. A & B)
Specifically, this court found that the panel "manifestly
disregarded the law" by concluding that Appel's claim for the

---

[3]  Feinberg was initially a petitioner in the second
arbitration, but withdrew his demand after conceding that Katz's
obligations would be owed to the Company, not to Feinberg
individually.  Katz, 2001 WL 1132018, at *1.

Exhibit D losses was not properly assigned by the company's creditors. (November 5 Transcript at 4-7) In addition, the court concluded that the panel's denial of Appel's requests for an evidentiary hearing amounted to "fundamental unfairness and misconduct" sufficient to warrant vacatur under 9 U.S.C. § 10(a)(3). (Id. at 8-9) Because the award was vacated and it again was possible for Appel to recover proceeds that Feinberg could use as a setoff against the June 13, 2001 judgment, this court re-imposed the stay. (Id. at 10)

Consistent with the November 16 Order, the parties returned to arbitration to contest again Appel's claims for the Exhibit D losses. The claims were heard by a new panel consisting of a new neutral arbitrator, David Rubin, Esq., a new arbitrator selected by Appel, John Byrne, Esq., and Stephen Katz, the same arbitrator selected by Katz in the first arbitration. (Storch Decl. ¶ 2) The panel held five hearings over the course of two months, considered over 300 exhibits, heard testimony from five witnesses, and reviewed extensive submissions from both parties. (Declaration of Donald L. Kreindler ("Kreindler Decl.") ¶ 4) The proceedings were declared closed by the arbitrators on February 7, 2005. (Storch Decl., Ex. C ("February 8, 2005 Letter")) Under AAA rules, the arbitrators were to render their award within 30 days, or by March 9, 2005. (Id.; see also American Arbitration Association, Commercial Arbitration Rules

and Mediation Procedures ("AAA Rules"), R-41)

In early March, at the panel's request, the parties extended the deadline for rendering an award to April 8, 2005. (Storch Decl., Ex. C)  On April 5, the panel again requested additional time to render the award and the parties again consented, extending the award due date to Friday, April 15. (Id.)

On April 15, the panel once more found itself unable to issue an award.  Accordingly, Karen Smith, the AAA administrator for the Appel arbitration, contacted the parties to inform them that the panel would be unable to render the award that day and was requesting an extension until April 22, 2005.  (Storch Decl. ¶ 4; Kreindler Decl., Ex. A)  It is not disputed that Katz, through counsel, consented to this request.  Nor is it disputed that Appel's counsel, Steven Storch, also initially consented when contacted by Smith at 4:30 p.m. after being advised by Smith that clerical issues caused the delay.  (Storch Decl. ¶ 4; Supplemental Declaration of Steven G. Storch ("Suppl. Storch Decl.") ¶ 3)

Twenty minutes later, however, Storch changed his mind. At 4:51 p.m., he called Smith and stated that he could not say whether Appel objected to the extension until he knew whether all of the arbitrators had requested it.  (Storch Decl. ¶ 5; Suppl. Storch Decl. ¶ 3)  Smith replied that the request came only from

Rubin and Katz because she was unable to contact Byrne and that the reason for the request was that Rubin had made a change to the award that he had not yet been able to discuss with Byrne. (Storch Decl. ¶ 5) Dissatisfied with this explanation, Storch orally withdrew his consent to the extension and, after being told that no award could issue that day, informed Smith that Appel "reserved all rights" if the award did not issue that day. (Id.) Storch confirmed his withdrawal in an e-mail to Smith that he composed from his Blackberry while at a mediation, but the e-mail was not transmitted until 9:02 p.m. due to wireless access problems at the site of the mediation. (Storch Suppl. Decl. ¶ 4)

Complicating matters further, at some point on the afternoon of April 15, Smith appears to have faxed to Storch and Donald Kreindler, Katz's counsel, a letter informing them that the award due date would be extended to April 22, 2005, and noting that "[b]oth parties have orally agreed to the extension." (Kreindler Decl., Ex. A)  Interestingly, Kreindler's copy of the fax contains two time stamps –- one at the top of the page reading 3:41 p.m. (i.e., before Smith first contacted Storch to request the extension) and the other at the bottom reading 4:42 p.m. (i.e., after Storch's initial consent, but before his attempted withdrawal).  (See id.; see also Storch Suppl. Decl. ¶ 5) It is unclear which of these time stamps, if either, is correct.  The letter asked both parties to sign the letter to

confirm authorization for the extension and return it to the AAA.
(Kreindler Decl., Ex. A)  Kreindler appears to have signed and
returned the form on April 18.  (<u>See</u> <u>id.</u>)  Storch says he has
neither recollection nor record of receiving a copy of the letter
signed by Kreindler, but it is unclear from his declaration
whether he received an unsigned copy of the letter direct from
the AAA.  (<u>See</u> Storch Suppl. Decl. ¶ 5)  The fax cover sheet
attached to Kreindler's copy is addressed to both parties and
lists Storch's contact information.  (<u>See</u> Kreindler Decl., Ex. A)

On Monday, April 18, Smith faxed the parties a "duly
executed facsimile copy of the Award" signed by arbitrators Rubin
and Katz, noting in her cover letter that Byrne had dissented.
(Storch Decl., Ex. E)  The fax did not, however, contain any
dissent from Byrne.  The award ordered Katz to pay Appel
$96,424.50 plus interest as his share of the losses in the
Exhibit D Proceedings.[4]  (April 18 Award at 7)

On April 20, Smith again faxed the parties, this time

---

[4]    The award was styled as a "Partial Interim Award of
Arbitrators" because the panel agreed to defer the issue of legal
fees until after the award's issuance.  (<u>See</u> April 18 Award at 6)
Specifically, the April 18 Award provides that the prevailing
party may notify the AAA in writing of its intent to pursue costs
and fees pursuant to Paragraph 14(g) of the Agreement within 30
days of the award's issuance.  (<u>Id.</u> at 7) The panel may award
fees to the prevailing party if the arbitrators find that any
claim or defense of the losing party was "unreasonable."  (<u>Id.</u> at
6) According to Appel, the parties have agreed to stay any
further proceedings relating to attorneys' fees pending the
determination of Appel's present motion and any appeal. (<u>See</u>
Appel Reply Mem. at 8-9)

enclosing a document titled "Statement of Arbitrator John F. Byrne, Esq." and dated April 19. (Storch Decl., Ex. F ("Byrne Statement"))  In the statement, Byrne argued that the April 18 Award was a "nullity" and "unenforceable" because he and arbitrator Rubin had duly executed a different version of the award on or before April 15 ("the April 15 Award").  (Byrne Statement at 1-2)  Byrne attached an unsigned copy of this earlier award to his statement and noted that he had executed it on April 13 and sent it to the AAA via facsimile and United Parcel Service.  (Id. at 1)  He asserted also that Rubin had executed the earlier award and "at least forwarded a facsimile copy" to the AAA by April 15, a fact he alleged the AAA could confirm.  (Id.) The earlier award was almost identical to the April 18 Award, but ordered Katz to pay Appel $186,632.00 plus interest for the Exhibit D Proceedings –- a difference of approximately $90,000.  (April 15 Award at 7)

Byrne's statement also contained additional details about the events leading up to the April 18 Award.  Specifically, Byrne explained that he had informed Rubin and the AAA in advance that he would not be available on April 14 or 15.  (Byrne Statement at 1)  Therefore, he learned about the extension only upon return on April 18, when he found out that Rubin had instructed the AAA not to deliver the April 15 Award because Rubin wanted to discuss some changes with him.  (Id. at 1)  These

changes were highlighted in a blue-lined revised draft of the award that Rubin had e-mailed to Byrne with a cover note on April 15, but that Byrne did not receive until April 18. (Id.) On the morning of April 18, Byrne vigorously contested the revisions in a telephone conversation with Rubin and said that he would not sign the revised award. (Id.) Byrne also allegedly raised the issue of the execution of the April 15 Award and was told by Rubin that "he did not want to get into that." (Id. at 2) Soon after the call, Byrne received an e-mail from the AAA advising the panel that the parties had withdrawn consent to the extension and that the award had to be rendered on April 18. (Id.) Byrne replied to the e-mail, stressing that the April 15 Award had been properly executed; he received no response. (Id.) Soon thereafter, he received a facsimile copy of the April 18 Award with the cover letter to the parties noting his dissent. (Id.)

Although the parties disagree as to which award should be enforced, both recognize that the awards differ only in a single respect. (See Appel Mem. at 7-8; Katz Opp'n Mem. at 6) Specifically, in a section of the award that considers the amounts owed to Appel in each individual Exhibit D proceeding, the April 15 Award concludes that the losses for a matter titled "Style International" ("Style matter") are zero, while the April 18 award credits Katz $139,000 for the matter and applies this amount to offset losses from other Exhibit D Proceedings. (See

April 15 Award at 5; April 18 Award at 5, 6) The funds for this "credit" are derived from a $184,000 "reserve" apparently set out for the Style matter in Exhibit D of the Agreement, which is not attached to the parties' submissions. (See April 18 Award at 5) The $139,000 figure is the difference between the $184,000 reserve total and the $45,000 that Appel paid to settle the Style matter. (See id.) The April 15 Award, by contrast, concludes that the losses from the Style matter are zero because the reserve amount is greater than the settlement amount. (See April 15 Award at 5) The consequence of these differing applications is that the April 15 Award orders Katz to pay Appel roughly $90,000 more than does the April 18 Award.

The April 15 Award does not explain its treatment of the reserves; the April 18 Award contains a single paragraph that reflects its treatment of the reserves in the Style matter. In the paragraph, the panel rejects Appel's argument that "reserves in excess of losses should not be credited to Katz's account" and purports to rely on the Agreement's definition of "Net Proceeds":

> [T]he Agreement provides that "Net Proceeds required to be paid to Seller and Losses required to be [sic] Company" shall both be paid on the Payment Date. "Net Proceeds" include "(I) payments actually received by the Company in respect of any judgments, settlements or awards made in connection with any such Proceedings <u>plus an amount equal to any relieving of reserves established on the financial statements of the Company in respect thereof</u> and set forth on Exhibit D thereto, minus...(emphasis added)" The fact

11

> that the Company was in bankruptcy does not
> alter the plain meaning of paragraph eight
> and we are bound to apply it, just as we are
> bound to disregard accruals that may have
> affected the purchase price and [sic] not
> included in Exhibit D.  (April 18 Award at 3)
> (Emphasis in original)

The preceding paragraph is the only difference in the body text
of the two awards.

On May 4, 2005, Appel filed a motion to confirm the
April 15 Award under 9 U.S.C. § 9 of the FAA and vacate the April
18 Award pursuant to 9 U.S.C. § 10 of the FAA.  On May 19, Katz
filed papers opposing Appel's motion to confirm and vacate, and
cross-moved to lift the stay of enforcement of the June 13, 2001
judgment from the first arbitration.  Katz also seeks
confirmation of the April 18 Award under 9 U.S.C. § 9.[5]

III.

Appel first asks this court to confirm the unsigned
April 15 Award that was attached to Byrne's statement under 9
U.S.C. § 9 of the FAA.

In general, an action to confirm an arbitral award
under 9 U.S.C. § 9 is "a summary proceeding that merely makes
what is already a final arbitration award a judgment of the
court," Florasynth, Inc. v. Pickholz, 750 F.2d 171, 176 (2d Cir.

---

[5]    Katz acknowledged his intent to confirm the April 18
Award through counsel following a teleconference with the court
on October 28, 2005.

1984) (citation omitted), and the "showing required to avoid summary confirmation is high." See Ottley v. Schwartzberg, 819 F.2d 373, 376 (2d Cir. 1987). However, a party can employ the enforcement provisions of the FAA –- and enjoy the presumptions in favor of confirmation –- only if what it seeks to enforce is actually a "final" award. See, e.g., Michaels v. Mariforum Shipping, S.A., 624 F.2d 411, 414-15 (2d Cir. 1980). Here, Katz argues that the document Appel seeks to confirm is not an award at all, but rather, "a preliminary or tentative unsigned decision, which was never issued by the AAA." (Katz Opp'n Mem. at 4) I agree.

     According to Appel, the April 15 Award is valid and enforceable solely on the basis of Byrne's statement that Byrne and Rubin executed a copy of the unsigned award that is attached to Byrne's statement and delivered it to the AAA on or before April 15. (See Appel Mem. at 10-12; Appel Reply Mem. at 1-3) The AAA apparently disagrees, however, because regardless of whether it received the signed copies from Byrne and Rubin as Byrne alleges, it never issued the April 15 Award and instead sent the parties the April 18 Award as the sole award of the panel. Although the parties' submissions do not demonstrate conclusively if and when the AAA received the April 15 Award from Byrne and Rubin, they suggest that the AAA granted Rubin's request to seek an extension from the parties to allow him to

discuss a revision to the award with Byrne, who was unavailable.
(See Byrne Statement at 1)  The revision –- the adjustment to the
treatment of reserves in the Style matter -- presumably was
reflected in the blue-lined draft Rubin sent to Byrne on April 15
before the time for making an award had expired.  (Id.)

Although Byrne's allegations regarding the purported
execution of the April 15 Award seem troubling, I will not
override the AAA's own determination that the April 15 Award was
not final and its decision not to issue the award to the parties.
To hold otherwise would put this court in the uncomfortable
position of second-guessing the AAA's conduct of its own affairs
and rejecting the sole award that the arbitral body charged with
administering the Appel arbitration deemed to be final.  The
proper course is to defer to the AAA's administration of the
arbitration and respect the limitations on a district court's
role in reviewing arbitral awards.  See, e.g., Folkways Music
Publishers, Inc. v. Weiss, 989 F.2d 108, 111 (2d Cir. 1993)
("Arbitration awards are subject to very limited review in order
to avoid undermining the twin goals of arbitration, namely,
settling disputes efficiently and avoiding long and expensive
litigation.") (citation omitted).

The cases furnished by Appel (see Appel Mem. at 11-12)
do not compel a different result.  Indeed, none of them address
the question presented here –- whether a court should enforce an

unissued award that the relevant arbitral body has explicitly not
recognized as final —- and many of them stand on far different
factual footings.  In <u>McGregor Van De Moere, Inc.</u> v. <u>Paychex,
Inc.,</u> for example, the Court considered an entirely different
question: whether a court could enforce an award intended by the
arbitrators to be final where the panel bifurcated consideration
of liability and damages.  <u>See</u> 927 F. Supp. 616, 617-19 (W.D.N.Y.
1996).  <u>Mercury Oil Refining Co.</u> v. <u>Oil Workers International
Union, CIO</u>, meanwhile, involved an attempt by an arbitration
panel that had already signed and delivered an award to the
parties to issue another award that reversed the panel's original
findings after one the parties had complained about the decision.
<u>See</u> 187 F.2d 980, 982-83 (10th Cir. 1951).

        Although the other three cases cited by Appel suggest
in different ways that an award can become effective as soon as
it is signed by the arbitrators and/or delived to the arbitral
association, in none of them did the relevant arbitral
association dispute the finality of the award at issue.  <u>See</u>
<u>Photopaint Techs., LLC</u> v. <u>Smartlens Corp.</u>, 335 F.3d 152, 154 (2d
Cir. 2003) (AAA recognized award rendered by single arbitrator as
final and valid, but inadvertently delivered it four months
late); <u>Carpenters 46 N. California Counties Conference Bd.</u> v.
<u>M.L. Meddles</u>, 535 F. Supp. 775, 776-77 (N.D. Cal. 1981) (award
was "filed" by either arbitrators or arbitral association and

served on the parties a few days later); <u>Koch Oil, S.A.</u> v.
<u>Transocean Gulf Oil Co.</u>, 751 F.2d 551, 553-54 (2d Cir. 1985) (AAA
determined that award at issue was final and valid, even though
it sent award to parties a few days late).  These disparate cases
do not control the unique circumstances presented here where the
arbitral association rejected the finality of the award a party
is seeking to enforce and recognized a different document as the
sole and final award of the panel.

Appel relies heavily on <u>Koch Oil</u> for the proposition
that "the [AAA] itself has ruled that an award is effective once
it is signed within the time required for rendering an award."
(Appel Mem. at 11; <u>see</u> <u>also</u> Appel Reply Mem. at 3)  Appel is
correct that the AAA did decide in the setting of the <u>Koch Oil</u>
arbitration that an award that one party contested as untimely
was timely because it was effective upon signing, <u>see</u> <u>Koch Oil</u>,
751 F.2d at 553, but nothing in <u>Koch Oil</u> suggests that the AAA
intended to announce a bright-line rule applicable to every
factual situation.  Indeed, the AAA did not find itself bound by
any such rule when confronted with the unusual facts of the Appel
arbitration.

<u>Koch Oil</u> is instructive for another reason, however.
When faced with a challenge to the AAA's conduct, the court
underscored the AAA's ability to bind the parties to the
association's interpretations of its own rules "within reasonable

limits" and deferred to the AAA's timeliness determination.  <u>Id.</u> at 554; <u>see also</u> <u>McMahon</u> v. <u>RMS Elecs., Inc.</u>, 695 F. Supp. 1557, 1560 (S.D.N.Y. 1988) (noting "the AAA's broad power to interpret its own rules").

　　　　The same result should obtain here.  Like the parties in <u>Koch Oil</u>, Appel and Katz agreed to arbitrate their dispute pursuant to AAA rules.  (Kreindler Decl. ¶ 1) These rules do not state definitively when an award becomes "final" and effective, but require only that an award "be in writing and signed by a majority of the arbitrators" and "be executed in the manner required by law."  AAA Rules, R-42(a).　As the <u>Koch Oil</u> Court observed, <u>see</u> <u>Koch</u> <u>Oil</u>, 751 F.2d at 554, the rules do, however, vest the arbitrators and the AAA with the authority to interpret and apply these rules.  <u>See</u> AAA Rules, R-53 (providing that arbitrators shall resolve disputes about AAA rules by majority vote; enabling arbitrators and parties to refer disputes about the rules to the AAA for a "final decision;" and stating that "[a]ll other rules shall be interpreted and applied by the AAA").  The AAA was entitled to exercise this discretion and to determine whether the April 15 Award was final under its rules, and to decide whether to grant Rubin's request for extra time so he could discuss a change to the award with Appel's then-unavailable arbitrator.　Appel's attempt to "confirm" the April 15 Award is denied.

Appel next moves to vacate the April 18 Award under the FAA on several grounds, while Katz cross-moves to confirm the April 18 Award under 9 U.S.C. § 9.[6]

Again, "the court's function in confirming or vacating an arbitration award is severely limited." <u>Willemijn Houdstermaatschappij, BV</u> v. <u>Standard Microsys. Corp.</u>, 103 F.3d 9, 12 (2d Cir. 1997) (citation and quotations omitted). When a party moves for vacatur, it "bears the heavy burden of showing that the award falls within a very narrow set of circumstances delineated by statute and case law." <u>Duferco Int'l Steel Trading</u> v. <u>T. Klaveness Shipping A/S</u>, 333 F.3d 383, 388 (2d Cir. 2003). Specifically, an award may be vacated only on one of the four statutory grounds enumerated in the FAA, <u>see</u> 9 U.S.C. § 10(a), or on the non-statutory ground that the award exhibits a "manifest disregard of law." <u>Id.</u>; <u>see</u> <u>also</u> <u>Hoeft</u> v. <u>MVL Group, Inc.</u>, 343 F.3d 57, 63-64 (2d Cir. 2003). As this court has explained,

---

[6]    While the April 18 Award is styled a "Partial Interim Award of Arbitrators" because the panel retained jurisdiction to adjudicate a potential action by Appel to recoup legal fees (<u>see</u> April 18 Award at 6-7), the award nonetheless may be enforced and challenged under the FAA because it finally and conclusively disposed of a separate and independent claim –– namely, Appel's claim for Katz's share of the losses in the Exhibit D Proceedings.   <u>See</u> <u>Metallgesellschaft A.G.</u> v. <u>M/V Capitan Constante</u>, 790 F.2d 280, 282-83 (2d Cir. 1986); <u>Kerr-McGee Ref. Corp.</u> v. <u>M/T Triumph</u>, 924 F.2d 467, 471 (2d Cir. 1991); <u>Trade & Transp., Inc.</u> v. <u>Nat. Petroleum Charterers, Inc.</u>, 931 F.2d 191, 195 (2d Cir. 1991).

regardless of the grounds, the burden on the party seeking to vacate the award is a "a formidable one." <u>Smith</u> v. <u>Positive Prods.</u>, No. 05 Civ. 3748 (MBM), 2005 WL 2385859, at *3 (S.D.N.Y. Sept. 28, 2005) (<u>quoting</u> <u>Capgemini U.S. LLC</u> v. <u>Sorensen</u>, No. 04 Civ. 7584 (JGK), 2005 WL 1560482, at *3 (S.D.N.Y. July 1, 2005)).

If a court denies a motion to vacate and the non-moving party moves to confirm the award within one year of the date of the award, the district court must grant the motion to confirm. <u>See</u> <u>Ottley</u> v. <u>Schwartzberg</u>, 819 F.2d 373, 375 (2d Cir. 1987); <u>see also</u> 9 U.S.C. § 9 (if party applies to court for an order confirming arbitral award within one year after award is made, "the court must grant such an order unless the award is vacated, modified, or corrected...").

A.  The Arbitrators Did Not Exceed Their Powers

Appel argues that the award must be vacated under Section 10(a)(4) of the FAA, which provides for vacatur "where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(a)(4).  Appel offers two reasons why vacatur under Section 10(a)(4) is warranted.

First, Appel contends that the arbitrators were "functus officio," or without power to act, when they attempted to amend the April 15 Award because the award was "final." (<u>See</u>

19

Appel Mem. at 12). This argument can be disposed of easily because the court has determined that the April 15 Award was not final. Since the arbitrators had not arrived at a final award at the time of the April 15 Award, the "functus officio" doctrine does not apply. See, e.g., Trade & Transp., Inc. v. Nat. Petroleum Charterers, Inc., 931 F.2d 191, 195 (2d Cir. 1991).

Second, Appel argues that the arbitrators exceeded their powers by issuing an award on April 18 after their time for making the award had expired. (See Appel Mem. at 12-14) In support of this argument, Appel points to its prompt withdrawal of consent to the third extension request, which it contends rendered the "arbitrators...without power to unilaterally extend the time for making the award to April 18, 2005." (Appel Mem. at 13; Storch Decl. ¶¶ 5, 6) Recognizing that this court may nonetheless enforce a late award, Appel claims prejudice because the April 18 Award reduced its recovery by approximately $90,000. (Appel Mem. at 13; Appel Reply Mem. at 4-5)

A district court has discretion to enforce a late award if no objection to the delay has been made prior to the rendering of the late award or if the losing party fails to demonstrate prejudice or actual harm caused by the delay. West Rock Lodge No. 2120 v. Geometric Tool Co., 406 F.2d 284, 286 (2d Cir. 1968); Gov't of India v. Cargill Inc., 867 F.2d 130, 134-35 (2d Cir. 1989); McMahon, 695 F. Supp. at 1559; Grinnell Housing Dev. Fund,

20

Corp. v. Local 32B-32J, Serv. Employees Int'l Union, 767 F. Supp. 63, 66 (S.D.N.Y. 1991).

The court need not determine whether Appel timely objected because Appel fails to demonstrate prejudice.[7] To demonstrate prejudice, a petitioner must do more than show it lost the arbitration or otherwise fared poorly under the terms of the late award. See McMahon, 695 F. Supp. at 1559; Am. Airlines, Inc. v. Local 501, Transp. Workers Union of Am., 633 F. Supp. 723, 724-25 (E.D.N.Y. 1986); see also Green v. Ameritech Corp., 12 F. Supp. 2d 662, 665 (E.D. Mich. 1998), rev'd on other grounds, 200 F.3d 967 (6th Cir. 2000) (noting that prejudice from "losing the case later, rather than sooner, does not justify the setting aside of an arbitration award").

Perhaps recognizing this, Appel would fashion a specific prejudice claim by arguing that it would have recovered more from Katz "if the first and final timely award had been

---

[7]   The court notes that the unusual circumstances surrounding the third extension place Appel's timely objection claim on questionable footing.  For one, Appel initially consented to the extension -- a consent that may have prompted a confirmation letter from the AAA -- and withdrew this consent very late Friday afternoon (and evening). (Storch Decl., ¶¶ 5, 6; Storch Supp. Decl. ¶ 4)  The award then issued on the very next business day, which was presumably the soonest it could issue after the withdrawal.  Moreover, the stated reason for the withdrawal was that the extension request did not come from Byrne -- but it never could have because Byrne was not reachable on either April 14 or 15.  (Byrne Statement at 1)  Appel's timely objection claim is thus distinguishable from a typical case where a party objects unequivocally to an award that is plainly late.

recognized as effective -- which it was..."  (Appel Mem. at 13;
Appel Reply Mem. at 5) This court's finding that the first award
was neither "final" nor "effective," however, dooms this
argument.  Moreover, even if the state of the panel's
deliberations as of April 15 held any legal significance, Appel
fails to demonstrate that it would have fared better if an award
had issued on that day.  Its own submissions demonstrate that by
the time Smith contacted the parties to request the extension,
Rubin already had devised the change to the Style matter, drawn
up a revised award reflecting this change, and e-mailed this
revised award to Byrne.  (Byrne Statement at 2)  What an award
would have looked like had it issued on April 15, therefore, is
far from clear.  Moreover, the apparent reason the revised award
could not be issued on April 15 was that Byrne -- Appel's own
arbitrator -- was unavailable, and Rubin apparently did not want
to issue the award without his input.  (See Byrne Statement at 1)

        Appel claims prejudice also because its "party
arbitrator was excluded from deliberations" after submitting the
April 15 Award.  (Appel Mem. at 13)  But Appel's own submissions
belie this claim.  In his dissenting statement, Byrne concedes
that Rubin sent him the revised award on April 15 with a cover
note stating that he wanted to discuss it with him and that the
he and Rubin discussed the change to the Style matter on the
morning of April 18 before the April 18 Award was issued.  (Byrne

Statement at 1-2)  Byrne also admits that the treatment of the reserves had been considered previously "in several Executive Sessions with the entire Panel" before April 15.  (Id. at 2)  Thus, Byrne had the opportunity to participate in discussions regarding the Style reserves both generally throughout the panel's deliberations and specifically after Rubin had crafted the revised award.  His interpretation was simply overruled by the majority of the panel.

Because Appel cannot demonstrate prejudice, this court has the discretion to enforce the April 18 award, and it rejects Appel's vacatur challenge under 9 U.S.C. § 10(a)(4) of the FAA.

B.  The Panel Did Not Manifestly Disregard the Law

Appel argues also that vacatur is appropriate under the FAA because the April 18 Award was made "in manifest disregard of the law."  (See Appel Mem. at 14; Appel Reply Mem. at 5-8).  Specifically, Appel asserts that the arbitral panel "completely disregarded the plain words of the [A]greement" by reading the definition of "Net Proceeds" to provide for a credit in the Style matter when the available reserves in that proceeding exceeded losses.  (Appel Mem. at 14; Appel Reply Mem. at 6-8)  According to Appel, this determination manifestly disregarded the New York contractual principle that "the actual words of an agreement must guide its interpretation."  (Appel Mem. at 14 (citation omitted))

This court's review under the manifest disregard standard is "severely limited." Duferco, 333 F.3d at 389 (quoting Gov't of India v. Cargill Inc., 867 F.2d 130, 133 (2d Cir 1989)); Wallace v. Buttar, 378 F.3d 182, 189 (2d Cir. 2004).[8] The manifest disregard standard is a "doctrine of last resort" whose use is limited "only to those exceedingly rare instances where some egregious impropriety on the part of the arbitrators is apparent, but where none of the provisions of the FAA apply." Duferco, 333 F.3d at 389; see also Wallace, 378 F.3d at 190

---

[8]    I do not accept Katz's argument that Appel may not bring a "manifest disregard" challenge because the Agreement's New York choice of law provision displaces the FAA and the "manifest disregard" standard crafted by federal courts. (See Katz Opp'n Mem. at 6-7)  Although parties may select state arbitration rules to govern their agreement to arbitrate regardless of whether the FAA would otherwise apply, see Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior University, 489 U.S. 468, 479 (1989), the general "Governing Law" clause included the Agreement (see Kreindler Decl. ¶ 12 n.4), which makes no reference to arbitration, does not express an intent to import New York's decisional law regarding "manifest disregard" and displace federal law interpreting the FAA.  See Mastrobuono v. Shearson Lehman Hutton, Inc., 514 U.S. 52, 64 (1995) (holding that general New York choice of law clause covered the "rights and duties of the parties," but did not import New York decisional rule barring punitive damages); Nat'l Union Fire Ins. Co. v. Belco Petroleum Corp., 88 F.3d 129, 134-35 (2d Cir. 1996) (holding that general New York choice of law clause was not "unequivocal inclusion" of New York decisional rule regarding preclusive effect of prior arbitration); Shaw Group Inc. v. Triplefine Int'l Corp., 322 F.3d 115, 123 (2d Cir. 2003) (explaining that, under Mastrobuono, "the mere inclusion of a choice-of-law provision in an arbitration provision does not thereby incorporate state arbitration law"); see also Roadway Package Sys., Inc. v. Kayser, 257 F.3d 287, 296 (3d Cir. 2001) (concluding that "general choice of law clause, standing alone, is insufficient to support a finding that the parties intended to opt out of the FAA's default standards" for vacatur).

("[W]e have used the manifest disregard of law doctrine to vacate arbitral awards only in the most egregious instances of misapplication of legal principles.").

A district court considering a challenge under manifest disregard may vacate only if it finds both that (1) the arbitrators knew of a governing legal principle yet refused to apply it or ignored it altogether <u>and</u> (2) the law ignored by the arbitrators was "well defined, explicit, and clearly applicable to the case." <u>Wallace</u>, 378 F.3d at 189; <u>see also</u> <u>Westerbeke Corp.</u> v. <u>Daihatsu Motor Co., Ltd.</u>, 304 F.3d 200, 208, 209 (2d Cir. 2002). Vacatur is not appropriate "merely because [the court] is convinced that the arbitration panel made the wrong call on the law. On the contrary, the award 'should be enforced, despite a court's disagreement with it on the merits, if there is a <u>barely colorable justification for the outcome reached</u>.'" <u>Wallace</u>, 378 F.3d at 190 (<u>quoting</u> <u>Banco de Seguros del Estado</u> v. <u>Mut. Marine Office, Inc.</u>, 344 F.3d 255, 260 (2d Cir. 2003)) (emphasis in original). This deferential standard is appropriate because of "the reality that arbitrators often are chosen for reasons other than their knowledge of applicable law", <u>Duferco</u>, 333 F.3d at 390, and a court "cannot presume that the arbitrator is capable of understanding and applying legal principles with the sophistication of a highly skilled attorney." <u>Wallace</u>, 378 F.3d at 190.

When evaluating manifest disregard challenges to arbitral interpretations of contracts, courts have construed the above principles to require substantial, if not complete, deference to the panel's interpretation. "Interpretation of [a] contract term[] is within the province of the arbitrator and will not be overruled simply because [the court] disagree[s] with the interpretation." Yusef Ahmed Alghanim & Sons, W.L.L. v. Toys "R" Us, Inc., 126 F.3d 15, 25 (2d Cir. 1997); see also Westerbeke, 304 F.3d at 214 (noting that "[t]he arbitrator's factual findings and contractual interpretation are not subject to judicial challenge" when court evaluates whether panel manifestly disregarded the law); In re I/V Stavborg, 500 F.2d 424, 432 (2d Cir. 1974) (finding "no basis" to reverse award "even though it is based on a clearly erroneous interpretation of the contract"). An award may only be disrupted -- if at all -- if the arbitrators manifestly disregard a "clearly applicable and explicit principle of contract construction." Westerbeke, 304 F.3d at 214.

Appel's challenge to the panel's construction of "Net Proceeds" does not meet the extremely high bar set for vacatur based on manifest disregard. The only legal principle that Appel relies on is the contractual principle that the actual words of an agreement must guide its interpretation. (See Appel Mem. at 14) Appel presents no evidence, however, that the panel "ignored" or "refused to apply" this principle. To the contrary,

the panel explicitly considered the definition of "Net Proceeds"
provided in the Agreement and concluded that the "plain meaning"
of the term required Exhibit D reserves to be included as "Net
Proceeds" even when they exceeded losses in a particular matter.
(See April 18 Award at 3)  Although I would take issue with
panel's construction of "Net Proceeds," the panel's decision
"will not be overruled simply because [the court] disagree[s]
with the interpretation."  Toys "R" Us, 126 F.3d at 25.  Because
the panel purported to construe the actual words of the
Agreement, its interpretation will not be disturbed.

C. Confirmation of the April 18 Award

        Because this court rejects Appel's challenges to the
April 18 Award and because Katz has cross-moved to confirm within
one year of when the award was made, the April 18 Award is
confirmed.  See 9 U.S.C. § 9; Ottley, 819 F.2d at 375; see e.g.,
Smith, 2005 WL 2385859, at *1 (denying motion to vacate award and
granting cross-motion to confirm).

V.

        Finally, Katz cross-moves to lift the stay of
enforcement of the June 13, 2001 judgment against Feinberg
entered by Judge Haight in the first arbitration.  (Kreindler
Decl. ¶ 1) The judgment orders Feinberg to pay Katz $363,496.29

plus pre- and post-judgment interest, see Katz, 2001 WL 1132018, and is secured by a bond posted by Feinberg. (See November 16 Order)

The stay was imposed by Judge Haight in 2001 because Feinberg claimed a contract right to offset his liability under the June 13, 2001 judgment against any losses that Katz was ordered to pay for the Exhibit D Proceedings in the second arbitration. See generally Katz, 2001 WL 1132018, at *1-*4. The request for the stay was granted because Feinberg had offered "credible evidence" regarding Katz's problems with the New York State taxing authorities that cast doubt upon Appel's ability to recover the Exhibit D losses without the stay. See generally id. I reimposed the stay in November 2003 when I vacated the award of the first panel in the second arbitration because it was again possible that Appel would receive an award for Katz's share of the Exhibit D losses that it might be unable to recover from Katz. (November 5 Transcript at 9-10) The stay was granted pending resolution of the second arbitration. (Id. at 10)

The second arbitration has now resulted in an award in favor of Appel totaling $96,424.50 plus interest, a sum less than the amount of the June 13, 2001 judgment. Logic would dictate that the stay therefore be lifted pro tanto such that Katz would collect the difference between the June 13, 2001 judgment and the April 18 Award. Such a result would give effect to both the June

13, 2001 judgment and the April 18 Award and ensure that Feinberg's alleged right to a setoff is not rendered a "nullity." See Katz, 2001 WL 1132018, at *4.  Although Appel argues that the stay ought to remain in place pending any appeal, it is not appropriate "to deprive Katz of the fruits of his Judgment for a protracted period while [Appel] pursues layers of appeals from the arbitrators' award."  Katz, 2003 WL 21750102, at *2.

Accordingly, the stay is lifted pro tanto and Appel is directed to pay Katz the difference between the June 13, 2001 judgment (including pre- and post-judgment interest) and the April 18 Award.  The parties will confer and submit a proposed judgment to the court quantifying the amount of this difference or submit separate proposed judgments accompanied by memoranda outlining and justifying any differences by November 22, 2005.

*       *       *

        For the reasons set forth above, Appel's motion to

confirm the April 15 Award and vacate the April 18 Award is

denied and Katz's motion to confirm the April 18 Award and lift

the stay of enforcement of the June 13, 2001 judgment is granted.

The parties are to submit a proposed judgment as described above

by November 22, 2005.


                                    SO ORDERED:


Dated:   New York, New York         Michael B. Mukasey,
         November 9, 2005           U.S. District Judge


                                30